# SUPREME JUDICIAL COURT,

FOR THE COUNTY OF

# HANCOCK.

## JUNE TERM,

## 1825.

### HILL vs. DYER.

A grant by the provincial government of *Massachusetts*, under the charter of *William* and *Mary*, conveyed no seisin to the grantee, against the province, without the approbation of the crown.

Under a power to execute a *release* of title to lands, a deed purporting to " grant, sell, and quitclaim" is a substantial execution of the authority.

The State, by virtue of its prerogative, is always seised of the lands to which it has title ; and may therefore convey them by release, notwithstanding the intrusion of strangers upon them.

Tnis was a writ of entry on the seisin of the demandant, brought to recover possession of part of a mill-site in the town of *Sullivan*. In a case stated by the parties it appeared that the General Court of *Massachusetts* by a resolve dated *March* 4, 1803, appointed Gen. *Cobb* to cause a survey to be made of the township of *Sullivan*, and to make a report of the condition of the lands, and of the claims and situation of the settlers thereon ; which was accordingly done ; and a plan returned, with his report, designating the lots which, in his opinion, ought to be assigned to the respective settlers. This report was accepted by the resolve of *March* 8, 1804, by which the selectmen of *Sullivan* were authorised to release to each settler, mentioned in the report, the interest of the Commonwealth in the lot therein assigned to him. Under this resolve the selectmen, by deed of quitclaim, dated

Sept. 15, 1804, conveyed the premises to the demandant, as the assignee of Asa Dyer, one of the settlers named in the report. The demandant, long before this, was in possession of the residue of the lot of which the mill-site was a part ; and soon after the date of his last mentioned deed he built a grist mill adjoining the demanded premises, which he had ever since occupied.

It further appeared that the General Court of the late province of Massachusetts, by a resolve passed March 2, 1762, granted the same township to David Bean and eighty one others ; which was duly located in 1763, and confirmed by resolve Jan. 27, 1764 ;—and that the tenant's grantors built a saw mill on the demanded premises, and that they and he had continued in the open and exclusive possession thereof, claiming title in fee, from the year 1770 to the present time. It was also admitted that Ephraim Dyer, the father and grantor of the tenant, and all the other owners of the saw-mill, had accepted deeds from the selectmen, of other lands, as settlers, under the resolve of March 8, 1804.

Abbot and Greenleaf, for the tenant. The Commonwealth had parted with its seisin of the lands, by the resolve of 1762 ; and it could not be re-seised but by inquest of office, or other legal process. Hence its deed of release could not take effect in favor of the demandant, there being, at the same time, an exclusive adverse seisin and possession of the premises demanded. Mayo v. Libby 12 Mass. 343. Green v. Watkins 7 Wheat. 27. Such a deed creates no seisin in the grantee. 1 Mass. 483. But if it did, yet the deed of the selectmen to the demandant is not valid, because not made pursuant to their authority. They were directed only to "release" the title of the Commonwealth ; but they have assumed to "grant, sell, and quitclaim." The object of the resolve was merely to quiet settlers in the enjoyment of their actual possessions, by placing them in the situation in which they would have been, if the lands had been owned by private persons, and sixty years had elapsed. Hence, the title of the tenant had ripened into an indefeasible estate, by lapse of time. The Proprietors of No. Six v. Jones 12 Mass. 336.

Orr and Deane, for the demandant.

WESTON J. delivered the opinion of the Court.

By the resolve of *March* fourth 1803, it appears that certain of the inhabitants of *Sullivan* holding their lands by an uncertain tenure, the legislature took measures to quiet them in their possessions ; and, with this view, appointed *David Cobb*, Esq. to cause a survey to be made of the township, and to report the state and condition of the lands, and the claims and pretensions of the settlers thereon. In pursuance of this authority, the agent, after causing an actual survey, made a return of the same, accompanied with a plan, designating particularly the lots, which in his opinion should be assigned to the respective claimants. His report was accepted ; and the selectmen of *Sullivan* were authorized by the resolve of the eighth of *March*, 1804, to release to each settler, according to the return of the agent, the interest of the Commonwealth in the lot to be assigned to him. Thereupon the said selectmen of *Sullivan* did, on the fourteenth of *Sept.* 1804, by their deed, professing to act under the authority delegated to them, " grant, sell, and quitclaim" to the demandant the interest of the Commonwealth in one hundred acres of land, embracing the premises demanded, he claiming, by certain mesne conveyances, under *Asa Dyer*, the first settler on said lot.

Various objections are taken to the title of the demandant. First, that the Commonwealth had no interest remaining in the land, at the time of the passage of the resolves before mentioned; they having previously granted the same to others. Secondly, if they had, that the tenant, and those under whom he claims, having been many years in the actual possession of the demanded premises, claiming title thereto, the interest of the Commonwealth could not pass to the demandant by a naked release ; and thirdly, if it could, that it did not pass in this instance ; the selectmen of *Sullivan* not having pursued their authority.

That the provincial government of *Massachusetts* had previously divested themselves of all their interest in lands in the town of *Sullivan*, is attempted to be shewn by three resolves of the General Court, passed prior to the revolution. By the resolve of *March* second, 1762, a township was granted to *David Beane* and eighty one associates; by that of *January* twenty ninth, 1763, the

township was located, and, by the resolve of *January* twenty seventh, 1764, the present township of *Sullivan* was confirmed to the said *David Bean* and others.

By the charter of King *William* and Queen *Mary* of 1691, under the authority of which the General Court then acted, and by which the colonies of *Massachusetts* and *Plymouth*, the province of *Maine*, territory of *Acadia* or *Nova Scotia*, and all that tract of land lying between the said territories of *Nova Scotia* and the said province of *Maine*, were united under one provincial jurisdiction, it was among other things provided, that "no grant or "grants of any lands, lying or extending from the river of *Saga-* "*dahock* to the gulf of *St. Lawrence* and *Canada* rivers, and to the "main sea northward and eastward, to be made or passed by the "governor and general assembly of our said province, be of any "force, validity, or effect, until we, our heirs or successors, "shall have signified our or their approbation of the same." Accordingly, in the grant before mentioned to *Bean* and others, it is expressly provided that the same shall be of no force or effect, until his majesty, his heirs and successors, shall signify his or their approbation thereof, within eighteen months of the date of the grant. This assent it is agreed has never been obtained ; but on the contrary, the resolves of 1803 and of 1804 before stated, being passed by the legislature of *Massachusetts*, which, at and after the revolution, succeeded to the rights of the crown, must be considered a virtual disaffirmance of the before mentioned grant. It results therefore that at the time of their passage, the Commonwealth had a good and valid title to the township of *Sullivan*.

The origin of the title of the tenant does not appear. By the grant to *Bean* and others, they acquired a defeasible seisin in the tract granted, embracing the demanded premises, and they might have been disseised of the latter, by those under whom the tenant claims. But although *Bean* and others might be disseised; yet by a well established principle of law, the Commonwealth could not be, and the grant to *Bean* being void, as well by its express provisions, as by the virtual disaffirmance of the Commonwealth, the actual possession of the tenant, or those under whom he claimed, interposed no legal obstacle to the conveyance of the interest of the Commonwealth, to whomsoever they might think proper

to grant it.   A release made by a party not seised, in the case of an individual or a corporation, is inoperative to pass an interest in lands, unless made to a party actually seised or possessed of the same.   But the Commonwealth, in virtue of its prerogative, notwithstanding the intrusion of others without right upon the premises, was seised, and might therefore pass their interest by release, without violating the principles of the common law. Besides, it was quite within the the scope of legislative power, for the General Court of *Massachusetts*, to prescribe a valid mode of conveying their interest, if they had deemed it expedient so to do, which might have been ineffectual or inoperative, if used by an individual or private corporation.

It is contended that the selectmen of *Sullivan*, using in their deed the terms " grant, sell, and quitclaim," have not thereby released the interest of the Commonwealth; but we are of opinion that their authority is substantially pursued, the word " quitclaim" being of equivalent meaning with the term " release."

There is nothing in the case of the *Proprietors of No. Six v. Jones*, cited in the argument, which is at variance with the opinion here given.   The tenant in that case made out a title by disseisin; but it was a disseisin, not of the province, or of the Commonwealth of *Massachusetts*, but of their grantees.

The opinion of the Court is, that upon the state of facts agreed, the demandant is entitled to judgment.